UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VAHIDEH HOSSEINIKHAH MANSHADI, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 24-cv-10118-ADB |
| DAVID ALLEN, *Deputy Chief of Mission, U.S. Embassy in Armenia in his official capacity*; and | * * * * | |
| MARCO RUBIO, *Secretary U.S. Department of State, in his official capacity*, | * | |
| Defendants. | | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff brings the instant suit against Defendants for failure to adjudicate her father's visa application within a reasonable time. The Complaint asserts claims for unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) (Count I) and deprivation of due process of law under the Fifth Amendment (Count III), and seeks to compel agency action pursuant to the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361 (Count II). [ECF No. 1 ("Complaint" or "Compl.")]. For the following reasons, Defendants' motion to dismiss, [ECF No. 12], is **GRANTED**.

I.  **BACKGROUND**

Following a brief review of the applicable statutory scheme, the Court provides a summary of the relevant facts, taken primarily from the Complaint. As it may on a motion to dismiss, the Court also considers "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting Colonial Mortg. Bankers Corp. v. Lopez-Stubbe, 324 F.3d 12, 20 (1st Cir. 2003)).

A.  **Statutory Scheme**

Under the Immigration and Nationality Act ("INA"), a U.S. citizen may seek lawful permanent resident status for an immediate relative, including a parent. 8 U.S.C. § 1154(a)(1)(A)(i), 1151(b)(2)(A)(i); see also id. §§ 1181(a), 1182(a)(7)(A) (a noncitizen must have a visa to be admitted to the United States as an immigrant). Specifically, the U.S. citizen must file a Form I-130, Petition for Alien Relative ("petition") with U.S. Citizenship and Immigration Services ("USCIS"), confirming that the noncitizen beneficiary qualifies as an eligible family member. Id. §§ 1154(a)(1)(A)(i), 1151(b)(2)(A)(i) (defining a parent as an immediate relative for purposes of the petition); 8 C.F.R. § 204.1(a). If eligibility is established, USCIS approves the petition and, for noncitizen beneficiaries outside of the United States, forwards the case to the State Department's National Visa Center ("NVC"). 8 U.S.C. § 1202; 8 C.F.R. §§ 204.2(a)(3). The NVC then gathers additional materials from the noncitizen beneficiary and collects a fee. 22 C.F.R. § 42.67. Once NVC processing is completed, the State Department schedules an immigration visa interview with a consular officer at an embassy with jurisdiction over the beneficiary's residence. 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61(a), 42.62; Arab v. Blinken, 600 F. Supp. 3d 59, 63 (D.D.C. 2022).

After the interview, a consular officer determines whether to "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer . . . the consular officer must issue the visa, [or] refuse the visa under INA 212(a) or 221(g) or other applicable law . . . .").[1] Notably, "[t]he authority to grant a visa rests exclusively with the consular officer." Ghannad-Rezaie v. Laitinen, No. 24-cv-11665, 2024 WL 4849587, at *1 (D. Mass. Nov. 21, 2024) (first citing 8 U.S.C. § 1201(a)(1)(A); and then citing 22 C.F.R. § 42.71(a)). Section 221(g) of the INA, one of the grounds for refusal, provides that an officer shall not issue a visa if "it appears to the consular officer" that the noncitizen is ineligible to receive a visa. 8 U.S.C. § 1201(g).

If the consular officer refuses the visa "because the officer determines the alien to be inadmissible," the officer must "provide the alien with a timely written notice that . . . (A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b)(1). No explanation, however, is required when the officer determines that the noncitizen is ineligible on criminal or national security grounds. Id. § 1182(b)(3). "The consular officer 'may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change' and may 'place[, as relevant here,] an officially refused application in administrative processing.'" Ghannad-Rezaie, 2024 WL 4849587, at *1 (quoting Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam)). "A refusal under INA § 221(g) may be 'overcome . . . when additional evidence is presented, or administrative processing is completed.'" Id. (quoting 9 U.S.

---

[1] A consular officer may also "discontinue granting the visa" pursuant "to an outstanding order under INA 243(d)," which allows the United States to sanction countries for failing to accept the return of their citizens and nationals removed from the United States. That provision, however, is not relevant for present purposes. 22 C.F.R. § 42.81(a); 8 U.S.C. § 1253(d).

3

Dep't of State, Foreign Affairs Manual § 306.2-2(A)(a) (2024) ("FAM")). Thus, if "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e).

Under such circumstances, a consular officer "re-open[s] and re-adjudicate[s] the case" and "determin[es] whether the applicant is eligible for a visa" if either additional evidence is presented or the consular officer determines that administrative processing is complete. Ghannad-Rezaie, 2024 WL 4849587, at *1 (quoting 9 FAM § 306.2-2(A)(a)(1)) (alteration in original). According to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

### B. Factual Background

Plaintiff is a U.S. citizen and resides in Westwood, Massachusetts. [Compl. ¶ 11]. In December 2019, she filed an I-130 visa petition on behalf of her father, Seyyed Mahdi Hosseini Khah Manshadi ("father"), an Iranian citizen, with USCIS. [Id. ¶¶ 2, 8, 17]. In May 2020, USCIS approved the visa petition and in February 2023, the father had a consular interview at the U.S. Embassy in Armenia. [Id. ¶¶ 18, 20]. After the interview, the father learned that his "case was placed in administrative processing pursuant to" 8 U.S.C. § 1201(g). [Id. ¶ 21]. Since then, Plaintiff has inquired about the status of her father's visa application on numerous occasions but has received "no meaningful response." [Id. ¶ 23].

### C. Procedural History

On January 1, 2024, Plaintiff filed this action against Chip Laitinen and Antony Blinken, named in their official capacities as, respectively, Deputy Chief of Mission of the U.S. Embassy in Armenia and Secretary of State. [Compl. ¶¶ 12–13]. On January 21, 2025, Marco Rubio

4

replaced Antony Blinken as Secretary of State and as of the date of this order, David Allen is the current Deputy Chief of Mission at the U.S. Embassy in Yerevan. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Rubio in his official capacity is substituted as a Defendant in place of Blinken, and Allen in his official capacity as a Defendant in place of Laitinen. Defendants moved to dismiss Plaintiff's Complaint on April 5, 2024, [ECF Nos. 12, 13], and Plaintiff opposed on April 19, 2024, [ECF No. 14 ("Opp'n")].

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citing Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011); Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2019)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

Defendants have moved to dismiss the Complaint on several grounds. Defendants assert that (1) this Court lacks jurisdiction to review Plaintiff's claims under the doctrine of consular nonreviewability, [ECF No. 13 at 6–11]; (2) because placing the father's visa application in administrative processing constituted a denial, Defendants met their obligations under the APA, [id. at 12–15]; and (3) the alleged delay is not unreasonable, and Plaintiff's claim is therefore without merit. [id. at 15–23]. Plaintiff replies that Defendants have not yet fully adjudicated her father's visa application, given that it is still undergoing administrative processing, and, as such, consular nonreviewability does not apply and her claims are properly reviewable under the APA's nondiscretionary duty to adjudicate within a reasonable period of time. [Opp'n at 7–14]. Plaintiff further contends that dismissal at this stage is premature given the fact-intensive nature of an unreasonable delay inquiry and, furthermore, that even if the Court considered the merits at this stage, she has adequately pled unreasonable delay. [Id. at 14–20].

### A.    The APA and MVA Claims (Counts I and II)

#### 1. Jurisdiction

"While the APA does not provide an independent source of subject-matter jurisdiction," Conserv. Law Found. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996) (citations omitted), the MVA vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361. As relevant here, courts "construe the APA and the MVA to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act

upon a visa or naturalization petition without unreasonable delay." Pishdadiyan v. Clinton, No. 11-cv-10723, 2012 WL 601907, at *11 (D. Mass. Feb. 7, 2012), report and recommendation adopted, No. 11-cv-10723, 2012 WL 602036 (D. Mass. Feb. 22, 2012), dismissed (Apr. 11, 2014). "Thus, a claim under § 706(1)," as brought forth here, "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted).

The relevant language in the INA provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Courts are split as to whether § 1202(b) creates a "nondiscretionary duty" establishing jurisdiction under the APA and MVA. See Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D. Mass. 2024); id. at 110 (collecting cases). That said, district courts within the First Circuit have "typically found a 'nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'" Durrani v. Bitter, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sept. 18, 2024) (quoting Conley, 731 F. Supp. 3d at 109). Because the Court finds no reason to reach a different outcome, and Defendants have not offered any persuasive arguments to the contrary, it assumes without deciding that consular officers have a nondiscretionary duty to adjudicate visa applications without unreasonable delay.

### 2. Consular Nonreviewability

The Supreme Court has recently held that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" Dep't of State v. Muñoz, 602 U.S. 899, 907 (2024) (quoting Trump v. Hawaii, 585 U.S. 667, 702 (2018)). Specifically, in relation to the doctrine of consular nonreviewability, the Court clarified that the INA "does not authorize

judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." Id. at 908.

At issue here, however, is not whether the Court can review a final visa adjudication, but rather whether the Court can compel Defendants to adjudicate a visa application during administrative processing. [ECF No. 13 at 7–9]; [Opp'n at 10–14]. Courts are split on this issue and the First Circuit has yet to provide guidance on this question. See Ghannad-Rezaie, 2024 WL 4849587, at *2–3 (collecting cases); compare Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D. Mass. 2023) (consular nonreviewability does not preclude claims seeking to compel final adjudication of visa application), and Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (visa application undergoing administrative processing not subject to consular nonreviewability), with Khan v. U.S. Dep't of State, 722 F. Supp. 3d 92, 98 (D. Conn. 2024) (consular nonreviewability bars compelling an official to adjudicate a visa application), and Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) (consular nonreviewability "precludes review under the APA").

Given the different approaches among its sister courts and absent guidance from the First Circuit, for purposes of this order, the Court will assume that the consular nonreviewability doctrine does not bar judicial review of Plaintiff's claims to compel agency action under the APA. See Conley, 731 F. Supp. 3d at 110.

### 3. Unreasonable Delay

"To state a claim for unreasonable delay under the APA, a plaintiff must allege that (1) a government agency failed to take legally required action and (2) the agency's delay in taking this action was unreasonable." Conley, 731 F. Supp. 3d at 110 (D. Mass. 2024) (first citing S. Utah

Wilderness All., 542 U.S. at 62–63; and then citing Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)).

With regard to the first factor, as noted above, Defendants argue that placing the father's application in administrative processing pursuant to INA § 221(g) means that the agency has taken the required agency action and, therefore, moots Plaintiff's claim. [ECF No. 13 at 12–15]. Plaintiff replies that a "refusal" requiring further administrative processing does not amount to final adjudication and that, as a result, Defendants have failed in their duty to act on the father's visa application. [Opp'n at 8–14].

Both positions are supported by case law. Compare Conley, 731 F. Supp. 3d at 111 (refusal, even if the "agency identified a specific contingency that might warrant reconsideration," is a final decision), with Carter v. U.S. Dep't of Homeland Sec., No. 21-cv-00422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) (refusal followed by administrative processing is not a final decision), and Ramirez v. Blinken, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) (refusal of visa application after consular interview is not final as it may be entered into "administrative processing"); and Ibrahim v. U.S. Dep't of State, No. 19-cv-00610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) (consular decision not final if visa application is undergoing administrative processing) (collecting cases). Here, the Court is inclined to agree with those courts who have determined that refusal does not constitute a final decision. Specifically, Ghannad-Rezaie considered the language of 22 C.F.R. § 42.81(e), providing that whenever "a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 2024 WL 4849587, at *3 (quoting 22 C.F.R. § 42.81(e)). Because "shall" implies a requirement, the court reasoned that the regulation creates a mandatory

9

duty to reconsider the refusal if new evidence is presented during administrative processing, and, as such, creates a duty to act. Id. In the instant case, Plaintiff's father received an email stating that his case "require[d] administrative processing" and that "in order to continue further consideration of [the] case," he was required to submit additional information. [ECF No. 14-1]. Assuming that the father provided the requested information, the plain terms of the regulation suggest that the Department of State has a duty to reconsider. Accordingly, for the narrow purposes of this order, the Court assumes that Defendants have yet to discharge their duty to act.

The second factor requires that the agency's delay be unreasonable. To evaluate whether agency action is unreasonably delayed, courts in the First Circuit consider the six factors laid out in Telecomms. Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) (hereinafter "TRAC"). The TRAC factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Id. (cleaned up).

Although Plaintiff argues that the fact-intensive inquiry into the reasonableness of a delay is premature at the motion to dismiss stage, [Opp'n at 14–15], she must nonetheless plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Durrani, 2024 WL 4228927, at *3

(acknowledging that the TRAC factors are fact-intensive, but determining that the court must "evaluate the facts pleaded in the complaint and determine whether they plausibly state a claim for relief under the applicable law").

The first two TRAC factors are usually considered together. Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). The first factor asks "whether the agency's response time . . . is governed by an identifiable rationale," Ctr. for Sci. in the Pub. Int. v. U.S. Food and Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014), and the second looks at "whether Congress has provided a timetable" that "may supply content for th[e] rule of reason," TRAC, 750 F.2d at 80. Neither factor supports a finding of unreasonable delay here.

As to the first factor, for visa applications, courts have generally found that an agency's process is governed by a "rule of reason," namely adjudicating them "in the order they were filed." Durrani, 2024 WL 4228927, at *4 (quoting Memon v. Blinken, No. 22-cv-00754, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023)). Nothing in the Complaint suggests that Defendants ran afoul of this or otherwise acted unreasonably with regard to the father's application.

As to the second factor, although Congress has a stated policy on the timing of visa applications to the effect that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b), courts have interpreted § 1571(b) as nonbinding on agencies. Durrani, 2024 WL 4228927, at *4–5; see also Palakuru v. Renaud, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) ("[P]refatory 'sense of Congress' language . . . is best interpreted as nonbinding." (quoting 8 U.S.C. § 1571(b))); id. at 51–52 (collecting cases recognizing that "a sense of Congress resolution is not law" (quoting Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008))). In other words, while Congress stated a

policy preference for expeditious visa adjudication, it did not provide a mandatory timeline, leaving it to the Court to determine whether the delay is unreasonable. Dastagir, 557 F. Supp. 3d at 165 ("With no set timeline, the Court looks to case law for guidance.").

Here, case law does not support Plaintiff's argument that Defendants' delay in adjudicating her father's application is unreasonable. Approximately eleven months elapsed between the time the father learned that his application was placed in administrative processing and the filing of the Complaint, and, as of this order, about twenty-four months have passed since Defendants last reviewed his case. This is not outside of the bounds of reasonableness. See Dastagir, 557 F. Supp. 3d at 165 (visa application in "administrative processing" for 29 months was not unreasonable); Zandieh v. Pompeo, No. 20-cv-0919, 2020 WL 4346915, at *5–7 (D.D.C. July 29, 2020) (same); Mirbaha v. Pompeo, 513 F. Supp. 3d 179, 185–86 (D.D.C. 2021) (27-month delay not unreasonable).[2]

The third and fifth factors are ordinarily assessed together and relate to the "interests prejudiced by delay," including the "impact on human health and welfare and economic harm." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Plaintiff alleges that she and her family have suffered emotional and financial hardship because of the delay. [Compl. ¶¶ 8–10]. Among other things, Plaintiff alleges that she has had to delay urgent surgery and has incurred significant expenses visiting her elderly father in Iran. [Id.]. The Court deeply

---

[2] To be clear, a significant amount of time—approximately five to six years—has elapsed since Plaintiff first filed her father's petition. Although this "waiting period stretches," Dastagir, 557 F. Supp. 3d at 165, and some courts consider such a delay as bordering on the unreasonable, Yavari v. Pompeo, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019), the Court also notes that it has been less than two years since the father's application was last reviewed by the Defendants and "[a] delay of this length does not typically require judicial intervention." Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017).

sympathizes with Plaintiff and her family, but cannot ignore that "the hardship that [she] alleges do[es] not materially distinguish [her] circumstances from those of countless other adult citizens hoping to bring their parents to the United States." Ghannad-Rezaie, 2024 WL 4849587, at *5. As such, these factors do not support a finding of unreasonable delay.

The fourth TRAC factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." 750 F.2d at 80. Courts generally "decline to move [a] plaintiff[] to 'the head of the queue' because doing so would "simply move[] all others back one space and produce[] no net gain." Durrani, 2024 WL 4228927, at *5 (alterations in original) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). The Court sees no reason to depart from this principle and, given that Plaintiff has not sufficiently alleged that Defendants treat her or her father differently compared to other applicants, it finds that this factor tilts in favor of the Defendants. Finally, because the Plaintiff alleges no facts suggesting bad faith or impropriety on the part of the Defendants, the sixth TRAC factor weighs neutrally in the Court's analysis. Palakuru, 521 F. Supp. 3d at 53.

In sum, the Court concludes that Plaintiff has failed to state a claim for unreasonable delay under the APA (Count I) and the MVA (Count II). Accordingly, Counts I and II are dismissed.

### B. DUE PROCESS (COUNT III)

Plaintiff further argues that the alleged unreasonable delay in the adjudication of her father's visa application violates her procedural and substantive due process rights under the Fifth Amendment. [Compl. ¶¶ 36–40]. Plaintiff's claim, however, is unavailing. A person ordinarily has no protected interest in a benefit that may be "grant[ed] or den[ied] in [the

13

government officials'] discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). And as the Supreme Court explained in its recent decision in Muñoz, in which it held that a U.S. citizen does not have a fundamental liberty interest in their noncitizen spouse being admitted to the country, "[w]hile families of putative immigrants certainly have an interest in their admission," U.S. citizens do not enjoy a "'fundamental right' that can limit how Congress exercises 'the Nation's sovereign power to admit or exclude foreigners.'" 602 U.S. at 915–16 (quoting Fiallo v. Bell, 430 U.S. 787, 795 n.6 (1977)). Muñoz further clarified that even assuming that Plaintiff has suffered harm from the delay, "that harm does not give her a constitutional right to participate in [a family member's] consular process." Id. at 917. Because Plaintiff has no constitutionally protected interest in the adjudication of her father's visa application, her procedural due process claim similarly fails. See Durrani, 2024 WL 4228927, at *7; see also Muñoz, 602 U.S. at 916–17 (plaintiff's claim to a "procedural due process right in someone else's legal proceeding would have unsettling collateral consequences . . . for the Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights." (quoting Castle Rock, 545 U.S. at 767)). Plaintiff's due process claim (Count III) is thus dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 12], is **GRANTED**.

**SO ORDERED.**

February 18, 2025  /s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE